IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISSETTE NUNEZ BRAVO, Administrator of the Estate of LUIS ABRAHAM NUNEZ<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>*Defendants.* | CIVIL ACTION<br><br>NO. 22-5190 |

## MEMORANDUM

**PAPPERT, J.**                                                                                  **September 19, 2023**

On December 28, 2020, Luis Abraham Nunez committed suicide by hanging himself while housed in the general population of the Philadelphia Industrial Correctional Center ("PICC"). Lissette Nunez Bravo, Nunez's sister and administrator of his estate, filed this lawsuit against the City of Philadelphia and numerous officials, entities and individuals, alleging violations of Nunez's Eighth and Fourteenth Amendment rights to adequate medical care and protection from the risk of suicide, as well as Pennsylvania state law negligence, wrongful death, and survival claims.

Nunez Bravo alleges that MHM Correctional Services and parent company Centurion Health contracted with the City of Philadelphia to provide mental health care and services in the Philadelphia prison system. (Am. Compl. ¶ 7, ECF No. 47.) Nunez Bravo refers to these entities collectively as "MHM". (*Id.*) She also names a number of individual defendants who she alleges were employed by or acting as agents of MHM and refers collectively to these individuals as the "MHM health care

providers." (*Id.* at ¶13.) Nunez Bravo further alleges that three other individuals, Dr. Marie Holder, Dr. Olumide Oluwabusi, and Dr. Marc Pimsleur, were employees, agents, or contractors of MHM. (*Id.* at ¶15-17.) The Counts are then brought against "MHM," "the MHM health care providers," or the individuals she believes are agents, employees, or contractors of MHM, including Drs. Holder, Oluwabusi and Pimsleur.

The MHM Defendants move to dismiss but define themselves to include MHM Correctional Services and numerous individuals, including most, but not all, of the individuals identified by Nunez Bravo. (Mot. to Dismiss Pl.'s Am. Compl. 2, ECF No. 49.) The MHM Defendants' accompanying brief argues for dismissal of Nunez Bravo's claims against the "MHM Providers," but confusingly interchanges individual defendants. (Resp. in Supp. of Mot. to Dismiss 5, ECF No. 50.) The bases for the motion appear to be that the Amended Complaint is not specific enough in its identification of individual Defendants and that the Fourteenth Amendment claims are duplicative of the Eighth Amendment Claims.

The Court denies the motion. Nunez Bravo has alleged enough facts to sufficiently state a plausible claim for relief, and discovery will allow her to more specifically identify the precise alleged roles of any individual defendants. Nunez Bravo does not at this point know whether her brother was a pretrial detainee or an inmate when he died and has accordingly pled her Eighth and Fourteenth Amendment claims in the alternative, as she is allowed to do. Discovery should also sufficiently inform that issue and the Court can take up the Defendants' arguments further, if necessary, at summary judgment.

I

Nunez pled guilty to robbery in May 2013. (Am. Compl. ¶ 19.) He was arrested for violating his parole in October 2020 and incarcerated at the Curran-Fromhold Correctional Facility. (*Id.* at ¶ 20.) After a court-ordered mental health evaluation, a common pleas court judge found Nunez posed a risk to himself and ordered him involuntarily committed to Norristown State Hospital for sixty days or until February 2021. (*Id.* at ¶ 22, 35.) Nunez Bravo does not know whether Nunez was ever convicted and sentenced for the parole violation. (*Id.* at ¶ 23.)

In October 2020, Nunez was sent from Curran-Fromhold to the Prison Health Services Wing ("PHSW") at the Philadelphia Detention Center, in part because he "said he was going to hang himself." (*Id.* at ¶ 27.) At intake at the PHSW, Nunez was noted to have "suicidal ideation." (*Id.* at ¶ 28.) In November 2020, he was released to PICC and placed in the general population. (*Id* at ¶ 29.) In early December, he was transferred back to the PHSW "because he was screaming that he was suicidal and had a plan to kill himself," but sent back to PICC shortly thereafter (*Id.* at ¶¶ 30-31.) On or about December 23, Nunez was again transferred to the PHSW "because he had expressed suicidal ideation with a specific plan to kill himself by hanging." (*Id.* at ¶ 32.) He was again noted to have had a past and recent history of suicidal ideation at intake. (*Id.* at ¶ 33.)

On December 25, various MHM health care providers and/or other select personnel released Nunez to PICC "based on nothing more than [his] wishes to return" there, notwithstanding the attending psychiatrist's order that he remain at the PHSW

3

for at least five days and the court order involuntarily committing him to Norristown State Hospital. (*Id.* at ¶¶ 35-36, 41.) Despite the prior intake determination, his discharge paperwork stated that Nunez "did not have prior suicidal/self-injurious behavior." (*Id.* at ¶ 36.) On December 28, he submitted a sick call slip and was visited at his cell by various MHM health care providers and/or Correctional Officers, "who noted that [he] was upset and agitated." (*Id.* at ¶¶ 37-39.) Later that same day, Nunez hung himself. (*Id.* at ¶ 39.)

## II

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. When presented with such a motion, district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). First, the court must accept the plaintiff's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, it must determine whether these well-pleaded facts, taken as true, are sufficient to show that the plaintiff has "a plausible claim for relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In making this determination, the court must construe these remaining facts in the light most favorable to the plaintiff and draw all reasonable inferences from them. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quotations omitted).

## III

The MHM Defendants' Motion is vague, leaving the Court, as well as Nunez Bravo, unsure which counts the motion seeks to dismiss. (Resp. in Opp. to Mot. to Dismiss 2, ECF No. 52.) For example, the MHM Defendants seek to have Nunez

Bravo's claims "against the MHM Providers" dismissed "in their entirety," and argue that her Fourteenth Amendment claims "must be dismissed as a matter of law." (Resp. in Supp. of Mot. to Dismiss 4.)

Counts I and II allege failure to prevent suicide and inadequate medical care in violation of 42 U.S.C. § 1983 and alternatively either the Fourteenth or Eighth Amendment against, *inter alia*, the "MHM health care providers" and select personnel. (Am. Compl. ¶¶ 52-55, 57-61.) Count III asserts a claim for supervisory liability against Dr. Holder, one of the MHM health care providers' supervisors. (*Id.* at ¶ 64.) Count IV asserts a *Monell* claim under Section 1983 and names "MHM," "ABC Corporation," the City of Philadelphia, and select individuals. (*Id.* at. ¶¶ 71-77.) Counts I-IV, pled in the alternative, invoke the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's Cruel and Unusual Punishment Clause. (*Id.* at ¶¶ 52, 57, 63, 70.) Count V contains a corporate negligence claim against "MHM" and "ABC Corporation." (*Id.* at ¶¶ 80-82.) Count VI accuses the "MHM health care providers" and apparent select personnel of negligence. (*Id.* at ¶¶ 84-86.) Counts VII and VIII assert wrongful death and survival claims against "All Defendants." (*Id.* at ¶¶ 88-96.)

The Court divines the MHM Defendants' Motion to seek dismissal of Counts I and II; the motion makes no reference to the pleading requirements for the state law claims asserted in Counts VI-VIII.

5

A

i

Evaluating a Section 1983 claim requires determining whether the plaintiffs have adequately alleged a deprivation of their rights and demonstrated the defendants' "personal involvement" in the alleged wrongdoing. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quotations omitted). The MHM Defendants focus on the latter. (Resp. in Supp. of Mot. to Dismiss 4-6.) A plaintiff sufficiently alleges a defendant's personal involvement by "describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga*, 806 F.3d at 222. Plaintiffs must "aver facts to show the defendants' personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

Claims alleging custodial failures to prevent suicide are cognizable under the Eighth and Fourteenth Amendments; the Eighth Amendment's prohibition of Cruel and Unusual Punishment protects convicted inmates while the Due Process Clause governs claims by pretrial detainees. *Palakovic v. Wetzel*, 854 F.3d 209, 221-24 (3d Cir. 2017). Similarly, inadequate medical care claims can be brought under the Eighth Amendment by convicted inmates and under the Fourteenth Amendment by pretrial detainees. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

ii

The MHM Defendants argue that Nunez Bravo "fails to specify who among the Defendants is responsible for any conduct." (Resp. in Supp. of Mot. to Dismiss 6.) They

ground this argument in Nunez Bravo's collective references to multiple individual Defendants. (*Id.* at 5.) For instance, Nunez Bravo alleges that Nunez "was seen at his cell by MHM health care providers Defendants Kimberley Nelson-Thomas LSW and/or Anoob Raju[,] RN and/or Rebecca Vanrey, RN . . ." including all Defendants previously referred to as "the MHM health care providers." (Am. Compl. ¶ 38.)

The Amended Complaint, read in a light most favorable to Nunez Bravo, alleges enough facts to show a plausible claim to relief. *Fowler*, 578 F.3d at 210-11. For example, Nunez Bravo alleges, with no "and/or" qualification, that all of the MHM health care providers were aware of her brother's severe mental health issues and history of suicidal ideation and suicide attempts. (Am. Compl. ¶¶ 25-26.) She also provides a thorough factual accounting of the treatment decisions and events leading up to Nunez's death. (*Id.* at ¶¶ 34-39.)

Nunez Bravo appears to allege that some of the "MHM health care providers" participated in the decision to release Nunez to PICC in contravention of court and psychiatrists' orders and then failed to protect him on the day of his suicide, but does not yet know who exactly made which decisions. For the time being, she has leveled these allegations against the individuals potentially responsible, pending discovery. *See* F. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim alternatively or hypothetically, either in a single count or defense or in separate ones").

Arguments concerning individual defendants' personal involvement can be addressed, if necessary, at summary judgment. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018) ("a plaintiff alleging that one or more officers engaged

7

in unconstitutional conduct must establish the 'personal involvement' of each named defendant to survive summary judgment and take that defendant to trial"); *see also id.* at 287 (explaining that plaintiff filed an excessive force against multiple defendants "[b]ecause he was unable to identify which of the officers in his immediate vicinity was the one that kicked him"); *see also* Compl. at 5-8, *Jutrowski v. Twp. of Riverdale*, No. 13-7351, 2017 WL 1395484, 2017 U.S. Dist. LEXIS 58827 (D.N.J. Apr. 17, 2017), *rev'd in part* 904 F.3d 280 (referring to multiple individuals as "Defendant police officers" and accusing multiple individual defendants); *Walker v. Doe*, No. 14-1504, 2015 U.S. Dist. LEXIS 126671, at *8-9 (W.D. Pa Sept. 22, 2015) (denying a motion to dismiss notwithstanding "[p]laintiff's *ultimate* obligation to identify particular defendants" and acknowledging plaintiff's present "inability to know" which specific defendants showed deliberate indifference) (emphasis in original).

B

If a constitutional claim is covered by a specific Amendment, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Nunez Bravo does not yet know whether her brother was a convicted inmate or a pretrial detainee. (Am. Compl. ¶ 23.) She has therefore pled her constitutional claims in the alternative in accordance with Fed. R. Civ. P. 8(d)(2), which permits a party to "set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate

ones." "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.* Moreover, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. (8)(d)(3).

The MHM Defendants argue that Nunez Bravo's Fourteenth Amendment claims are "duplicative" of her Eighth Amendment claims. (Resp. in Supp. of Mot. to Dismiss 6.) Because Nunez's status at the time of his death remains uncertain, it would be premature to dismiss either claim. *See Walker*, 2015 U.S. Dist. LEXIS 126671, at *9 (declining to treat a Fourteenth Amendment claim as duplicative of Eighth an Amendment claim because "the allegations of the Amended Complaint are sufficient at this early stage of the litigation to warrant retention of a Fourteenth Amendment claim, not yet clearly identified as indistinguishable from/duplicative of Plaintiff's other potential [c]onstitutional claims, pending discovery").

An appropriate Order follows.

                BY THE COURT:

                ***/s/ Gerald J. Pappert***
                GERALD J. PAPPERT, J.