IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISSETTE NUNEZ BRAVO, <br><br> Administrator of the Estate of LUIS ABRAHAM NUNEZ <br><br><br> *Plaintiff,* <br><br> v. <br><br> CITY OF PHILADELPHIA, et al., <br><br><br> *Defendants.* | CIVIL ACTION <br> NO. 22-5190 |

Pappert, J.                                                                                                                October 25, 2024

**MEMORANDUM**

Lissette Nunez Bravo filed a petition to approve the settlement of this wrongful death and survival action. The Court ordered supplemental briefing regarding the appropriateness of the proposed allocation between the wrongful death and survival action and the reasonableness of Nunez Bravo's attorneys' fees and costs. (ECF Nos. 73, 74.) The petition is unopposed, and the Court approves the proposed settlement and its allocation and distribution.

I

Nunez Bravo is the administratrix of her brother Luis Abraham Nunez's estate. On December 28, 2020, Abraham Nunez committed suicide by hanging himself while housed in the Philadelphia Industrial Correctional Center. Nunez Bravo hired the law firm Abramson & Denenberg, P.C. at an agreed upon contingency fee of 40%. She then

filed this lawsuit against the City of Philadelphia and numerous officials, entities and individuals, alleging violations of Abraham Nunez's Eighth and Fourteenth Amendment rights to adequate medical care and protection from the risk of suicide. She also brought Pennsylvania state law negligence, wrongful death and survival claims.  Abraham Nunez died intestate with no surviving spouse and no issue.  He is survived by his mother, Olga Iris Burgos-Rosado, and his sister, Nunez Bravo.

Defendants have agreed to settle the claims against them for a gross settlement amount of $195,100.[1]  Nunez Bravo seeks the following allocation:  (1) $14,126.55 to Abramson & Denenberg, P.C. for reimbursement of litigation expenses; (2) $78,000 (forty percent of the gross settlement) to Abramson & Denenberg, P.C. for legal fees; (3) $82,378.76 (eighty percent of the settlement proceeds) in wrongful death benefits to Burgos-Rosado; and (4) $20,594.69 (twenty percent of the settlement proceeds) in survival benefits to the Estate of Abraham Nunez.

II

Pennsylvania law requires court approval of proposed settlements of survival actions brought by an estate.  20 Pa. Cons. Stat. § 3323(b).  The primary purpose of this requirement is "to protect the estate, as well as the creditors and beneficiaries thereof." *Moore v. Gates*, 580 A.2d 1138, 1141 (Pa. Super. Ct. 1990); *see also Soares v. McClosky*, 466 F. Supp. 703, 707 (E.D. Pa. 1979) (explaining § 3323 "protects potential beneficiaries, assures that the taxing authority gets its due, and shelters the decedent's representative from subsequent liability").  Further, "where wrongful death and

---

[1] Nunez Bravo's petition claims the agreed settlement amount was $195,000.  But the distributions actually sum up to $195,100.  Thus, the Court treats $195,100 as the settlement amount.

survival actions are settled for a single amount, the amount apportioned to the survival action must be approved by a court having jurisdiction." *Moore*, 580 A.2d at 1141. Section 3323 also allows the Court to approve any "agreement for the payment of counsel fees and other proper expenses . . . ." 20 Pa. C.S. § 3323(b)(1).

Therefore, approval of a survival action settlement requires determinations as to: (1) "the adequacy of the proposed settlement amount"; (2) "the reasonableness of the proposed apportionment of the settlement amount between the wrongful death and survival action claims"; and (3) "the reasonableness of the attorneys' fees and costs requested." *Boykin v. Platinum Healthcare Grp., LLC*, No. 22-2939, 2024 WL 387638, at *7-8 (E.D. Pa. Jan. 31, 2024). The Court addresses each in turn.

A

Nunez Bravo asks the Court to allocate 80% of the settlement proceeds to the wrongful death claim and 20% to the survival action. "Because Pennsylvania policy favors wrongful death beneficiaries over estate beneficiaries, courts have approved settlements allocating large percentages to the wrongful death action over the survival action." *Romano v. United States*, No. 20-1852, 2020 WL 7364453, at *4 (E.D. Pa. Dec. 15, 2020) (internal quotations omitted); *see also Tamasy v. Yough Sch. Dist.*, No. 18-01236, 2019 WL 5864893, at *2 (W.D. Pa. Nov. 8, 2019). ("[W]hile scrutiny is required, there is nothing inherently suspect or improper about a settlement allocation favoring wrongful death beneficiaries.").

"Under the Pennsylvania Wrongful Death Act, 4 Pa. Cons. Stat. § 8301(b), damages are compensation to individual members of the decedent's family for the pecuniary loss sustained by the death of the decedent." *Rodi v. Williams*, No. 12-1379,

3

2015 WL 1863006, at *11 (M.D. Pa. Apr. 23, 2015) (citing *Tulewicz v. S.E. Pa. Transp. Auth.*, 606 A.2d 427 (Pa. 1992). This includes "contributions the decedent would have made for their shelter, food, clothing, medical care, education, entertainment, gifts and recreation" and the "value of the services, society, and comfort" they would have received. *Smith v. Sandals Resorts Intern., Ltd.*, 709 F. Supp. 2d 350, 356 (E.D. Pa. 2010) (citations omitted). In contrast, damages from a survival action "compensate the decedent's estate for losses from the tort," and address the "decedent's pain and suffering, loss of gross earning power from the date of injury until death, and probable earning during his life expectancy minus the probable cost of maintaining himself and wrongful death damages." *Id.* at 358. When there is no will, survival action proceeds are divided between the decedent's heirs by the laws of intestate. *Id.*

Here, Abraham Nunez had not worked for ten years, had "no known skills," was homeless prior to being incarcerated, and was under "constant medical care for his severe mental illness." (Supp. Brief at 6, ECF No. 74.) Thus, Abraham Nunez's earning capacity for the remainder of his life was negligible. Similarly, Nunez Bravo stipulates that Abraham Nunez' suffering from strangulation would have lasted "less than a minute" before he died. *Id.* Nonetheless, Abraham Nunez's death was not instantaneous—his final moments were gruesome and deserving of some portion of the settlement. The 20% allocation to Abraham Nunez's estate is reasonable.

Further, given Pennsylvania's preference for wrongful death beneficiaries, the distribution of 80% of the settlement proceeds to Abraham Nunez's mother is reasonable. Most settlements strongly favoring the wrongful death beneficiaries are approved. *See, e.g.*, *Kaufman v. Jetson Elec. Bikes, LLC*, No. 22-3765, 2024 WL 659490,

4

at *4-5 (E.D. Pa. Feb. 16, 2024). And although Abraham Nunez would not have had much to offer his mother by way of material benefits, the emotional distress she continues to feel over his death is severe. *See* (Supp. Brief at 6); (*Id.*, Ex. C). Thus, the 80% allocation to the wrongful death claim is reasonable.

B

The Court must also determine whether to approve the total settlement amount of $195,000. When determining the "fair value of the lawsuit," the Court typically gives "considerable weight" to the judgment of counsel and the parties. *Matter of McLean Contracting*, No. 14-5676, 2017 WL 2618855, at *1 (E.D. Pa. June 16, 2017) (citation omitted). Experienced counsel negotiated the $195,000 settlement at arms-length and in good faith with the assistance of Magistrate Judge Elizabeth T. Hey. *See* (ECF 65).

When the parties reached their settlement, they had a basic understanding of the allegations in Nunez Bravo's Amended Complaint. (ECF No. 47.) The Court's denial of the Defendants' motion to dismiss demonstrated to the Defendants that Nunez Bravo's allegations were at least plausible. (Def. Mot. to Dismiss, ECF Nos. 49); (Mem. Op. Denying Mot. to Dismiss, ECF No. 53.) And counsel for Nunez Bravo attests that "[f]urther litigation would have involved approximately an additional 112 hours of attorney time and $15,000 in expenses." (Supp. Brief at 5.) He avers that the proposed settlement is "in the best interest of the Petitioner and the Estate" and is "the maximum and fairest that could be achieved under the circumstances." (Pet. for Appr. of Settlement, Ex. B, ECF No. 72.) Finally, Nunez Bravo herself requested the Court's approval after reviewing the provisions of the settlement. (*Id.*, Ex. A.)

The Court's independent review of the case confirms that the $195,000

settlement is adequate when faced with the costs of additional litigation, the lack of damages for medical expenses or wage losses, Defendants' denial of liability and the uncertainty of a litigated outcome. *Cf. In re Hughes Estate*, 59 Pa. D. & C.2d 680, 682 (Pa. Ct. Comm. Pl. 1972) ("We have no difficulty in approving the amount of the settlement" because the "risk of recovering something less than the amount achieved by the settlement was a serious one.").

## C

Nunez Bravo requests forty percent of the total settlement fund, $78,000, for attorneys' fees. (Pet. for Appr. of Settlement.) The Court finds that this allocation is reasonable under the circumstances. The Court must independently review the settlement's proposed distribution to Nunez Bravo's attorneys. *Calvert v. Gen. Acc. Ins. Co.*, No. 99-3599, 2000 WL 124570, at *6 (E.D. Pa. Feb. 2, 2000). "'A settlement that protects a contingency fee and recovery of costs first and an estate's recovery thereafter is the proper subject of close judicial scrutiny.'" *Est. of Eckelberry v. CSX Transp., Inc.*, No. 18-365, 2019 WL 5068413, at *3 (W.D. Pa. Oct. 9, 2019) (quoting *Carter v. Southeastern Pa. Transp. Auth.*, 809 A.2d 464, 466-67 (Pa. Commw. Ct. 2002)). Nonetheless, "courts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable parties." *Ryan v. Butera, Beausang, Cohen & Brennan*, 193 F.3d 210, 215 (3d Cir. 1999).

In reviewing attorneys' fee awards in settlement agreements, Pennsylvania courts first consider the "the rate of professional compensation usual at the time and place" for the particular kind of case. *Thompson Estate*, 426 Pa. 270, 281 (1967). If the parties seek a departure from the ordinary rate, courts consider the following factors:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question [sic].

*LaRocca Estate*, 246 A.2d 339 (Pa. 1968)); *see also* Pa. R. Civ. P. 1717 (listing factors to consider in awarding counsel fees).

Generally, 40% attorneys' fee awards in wrongful death/survivor actions, that are based on an intelligently agreed upon contingency fee arrangements, have been upheld. *See, e.g.*, *Boykin*, 2024 WL 387638, at *17-21; *Salas v. Goldenberg*, No. 22-2179, 2023 WL 8832422, at *3-4 (E.D. Pa. Dec. 20, 2023); *Hammonds v. Luzerne Cty.*, 19-2199, 2020 WL 5517496, at *4 (M.D. Pa. Dept. 14, 2020).

Even so, the *Larocca* factors support the fee award. The issues of public significance presented by this case bolster the fair value of counsel's services. *Cf. Houchins v. KQED, Inc.*, 438 U.S. 1, 8 (1978) ("[C]onditions in prisons are clearly matters of great public importance." (internal quotations omitted)). Nunez Bravo's attorneys spent nearly 160 billable hours on her behalf, including reviewing thousands of pages of prison and medical records, responding to a motion to dismiss, preparing for and attending several depositions, and preparing for and attending an hours-long mediation session with Judge Hey. (Supp. Brief, Ex. B.) Nunez Bravo's two attorneys have practiced law for thirty-five and forty-seven years. (*Id.* at 2.) If they were not seeking contingent compensation, their reasonable billing rate under the Community Legal Services of Philadelphia fee schedule would be between $735-850 per hour. (*Id.*) 160 hours billed at a rate of $735 per hour would result in a fee of $117,600.

The requested fee award is fair. Counsel's supplemental briefing as to the nature and extent of services rendered shows the substantial effort involved in resolving this litigation given the uncertain outcome of the claims and the complexity of a resolution involving an inmate suicide. Finally, the requested $14,126.55 reimbursement of counsel's costs is reasonable.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.
